**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 3, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DON SALAZAR, ANDREA SALAZAR,
individuals, d/b/a C&S Trucking CO.,

    Plaintiffs - Appellants,

v.

THE QUICKRETE COMPANIES, LLC, a
Delaware limited liability company,

    Defendant - Appellee.

No. 19-2180
(D.C. No. 1:18-CV-00765-RB-LF)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Plaintiffs Don and Andrea Salazar, doing business as C&S Trucking, appeal

from the district court's grant of summary judgment in favor of defendant, The

Quikrete Companies, LLC, on plaintiffs' claim for promissory estoppel. Exercising

jurisdiction pursuant to 28 U.S.C. §1291, we affirm the district court's grant of

summary judgment in favor of defendant.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

The Salazars are residents of Rio Rancho, New Mexico. ECF No. 1 at 2. The Salazars conduct business under the name C&S Trucking Co. (C&S). *Id.* Defendant, The Quikrete Companies, LLC (Quikrete), is a Delaware limited liability company with offices in Atlanta, Georgia, and Denver, Colorado. *Id.*

In August 2013, C&S was hired by a Colorado-based Quikrete employee named Eric Leigh to haul marble and other mined material for Quikrete from a mine located near Monarch Pass, west of Salida, Colorado, to Wellsville, Colorado. *Id.*; ECF No. 36 at 4. Portions of that route, according to Mr. Salazar, are quite dangerous; specifically, the route includes a three-mile stretch that contains ten switchbacks and significant grade. ECF No. 36 at 2. Leigh allegedly told Mr. Salazar that Quikrete did not have any in-house drivers who were capable of handling the route. *Id.* Between August and October 2013, C&S hauled approximately 10,000 tons of rock and material for Quikrete. *Id.* at 4. C&S performed the work using two older Peterbilt trucks that they owned, along with rented trailers. *Id.*

At some point near or after the end of the 2013 hauling season, Leigh allegedly told Mr. Salazar: "Prepare yourself for the summer of 2014, because I need 35,000 tons [hauled] down the mountain." *Id.* at 3. According to Mr. Salazar, Leigh noted that C&S's trucks were inadequate to perform that amount of hauling work. *Id.* at 4. Leigh also purportedly told Mr. Salazar: "You can have the haul until you want it." *Id.* Mr. Salazar allegedly interpreted this statement as a promise by Leigh that C&S could have the Quikrete haul for ten years. *Id.* at 3.

2

Between the end of the 2013 hauling season and the beginning of the 2014 hauling season, Mr. Salazar purchased new equipment, including a new truck, two trailers, dumps, and a front end loader, totaling approximately $419,000. *Id.* at 6-7. According to Mr. Salazar, he told Leigh beforehand that he was going to purchase a new truck and Leigh told him "Go for it." *Id.* at 6.

C&S continued to haul material for Quikrete on the same route (roundtrip between the mine and Wellsville) during the summers of 2014 and 2015. *Id.* at 8. During the first part of the summer of 2016, however, Leigh hired a competitor of C&S's, an entity called Super Ex, to perform the hauling from the mine to Wellsville. ECF No. 35 at 5-6. During that same period, Leigh had C&S haul material from Wellsville to Dallas at a rate lower than Quikrete normally paid C&S for hauling material from the mine to Wellsville. ECF No. 36 at 8. Only at the end of the summer of 2016 did Leigh have C&S return to the job of hauling material from the mine to Wellsville. *Id.* Finally, in the summer of 2017, C&S again hauled material from the mine to Wellsville. *Id.*

Between 2014 and 2017, Leigh and Mr. Salazar typically spoke a month or so prior to the start of the summer hauling season and negotiated the amount that C&S would charge Quikrete for the hauling services. ECF No. 35 at 4-5. This amount was always a "per ton" figure. *Id.* At some point, Mr. Salazar allegedly asked Leigh for a written agreement, but Leigh declined that request. *Id.* at 10.

In April of 2018, Leigh allegedly told Mr. Salazar that C&S would again be hauling for Quikrete in the summer of 2018. ECF No. 36 at 8. Two to three weeks

3

later, however, Leigh told Mr. Salazar that he was terminating his relationship with C&S because he had found another company that would haul the material from the mine to Wellsville for substantially less than C&S was charging.[1]  *Id.* at 9.

Mr. Salazar allegedly tried, but failed, to find comparable and consistent hauling work for the summer of 2018.  *Id.*  As a result, Mr. Salazar was unable to make the loan payments for the equipment he had purchased in 2013 or 2014, and he ultimately had to return the equipment.  *Id.* at 9, 16.  In approximately June of 2018, C&S ceased operations, and Mr. Salazar began working as a truck driver for another company.  *Id.* at 16.

II

On August 9, 2018, the Salazars, represented by counsel, initiated these proceedings by filing what they described as a "Complaint For Recovery of Reliance Damages" against Quikrete in the United States District Court for the District of New Mexico.  ECF No. 1 at 1.  The complaint did not expressly identify a cause of action.  But its allegations effectively alleged a cause of action against Quikrete for promissory estoppel.[2]  The complaint alleged total damages in the amount of $739,735.40.  This included $239,817.90 for "the reasonable expectation of hauling

_____

[1] Quikrete allegedly paid C&S between $10.50 and $12 per ton of material hauled.  ECF No. 36 at 14.  Leigh allegedly found a competitor who was willing to accept $3.00 per ton.  *Id*. at 9.

[2] Quikrete asserted in its motion for summary judgment that the allegations in the complaint "c[ould] only be intended to assert a claim under the doctrine of promissory estoppel."  ECF No. 35 at 12.  The Salazars, in their response to Quikrete's motion, "agree[d] that Quikrete correctly state[d] the law to be applied in the case."  ECF No. 36 at 2.

revenue for 2018," $419,999.00 for "the cost of the equipment purchased for Quikrete's benefit," and $80,917.56 for "reduced haul rate losses" in 2016 and 2017. ECF No. 1 at 3, 4.

Quikrete moved for summary judgment. As an initial matter, Quikrete argued that New Mexico's choice-of-law rules required the district court to apply New Mexico law to the Salazars' claim. ECF No. 35 at 13-14. Quikrete in turn argued that the Salazars could not "establish at least four of the five elements of a claim for promissory estoppel" under New Mexico law. *Id.* at 15. More specifically, Quikrete argued that the Salazars could not

> show (1) an actual promise was made to them by Quikrete, (2) that their reliance on any alleged promise by Quikrete was reasonable, (3) that any action or forbearance on the part of the Salazars in response to Quikrete's alleged promise was actually foreseen or reasonably foreseeable by Quikrete when making the alleged promise and (4) that enforcement of any alleged promise by Quikrete [wa]s required to prevent injustice.

*Id.* at 15-16.

The Salazars, still appearing through counsel, filed a response in opposition to Quikrete's motion for summary judgment.

On October 2, 2019, the district court issued a memorandum opinion and order granting Quikrete's motion for summary judgment. Applying New Mexico law, as agreed to by the parties, the district court concluded that the Salazars "fail[ed] to produce evidence sufficient to create disputes of fact for all five elements" of promissory estoppel. ECF No. 40 at 4. In support of this conclusion, the district court first noted that "Quikrete did not promise C&S the 2018 hauling contract, and

5

therefore, [the Salazars] c[ould not] establish the first element of [their] promissory estoppel claim." *Id.* On that point, the district court acknowledged the statements that were allegedly made by Leigh to Mr. Salazar, but the district court nevertheless concluded that those statements were "vague and indefinite" because they "fail[ed] to establish price, quantity, or other material terms." *Id.* at 5. The district court noted that Leigh "always negotiated new terms in the Spring for the upcoming season," "[t]he different rates, routes, and totals suggest[ed] that the work performed each year varied significantly," and, ultimately, "the working relationship between C&S and Quikrete was predicated on the specific agreement negotiated each spring." *Id.* at 6. The district court further concluded that, given the increasing competition from other carriers, "the inconsistent work performed" by C&S for Quikrete, and the timing of [C&S's] equipment purchases," it was "unreasonable" for the Salazars to "expect[] to manage the 2018 haul." *Id.* at 9. The district court likewise concluded that it was unreasonable for C&S "to purchase over $400,000 worth of equipment based on . . . Leigh's imprecise and vague statements." *Id.* at 10.

The Salazars filed a timely notice of appeal and have since filed a pro se appellate brief.

### III

"[W]e review the district court's grant of summary judgment de novo." *Hays Med. Ctr. v. Azar*, 956 F.3d 1247, 1263 (10th Cir. 2020). "During our review, '[w]e apply the same standard of review as the district court.'" *Id.* (quoting *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1233 (10th Cir. 2017)).

6

Summary judgment is appropriate when "there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As we have noted, the parties agree that this diversity case is governed by the substantive law of New Mexico. The New Mexico Supreme Court has outlined the essential elements of promissory estoppel:

> An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

*Strata Prod. Co. v. Mercury Exploration Co.*, 916 P.2d 822, 828 (N.M. 1996).

After carefully reviewing the Salazars' pro se appellate brief and all of the district court pleadings, we agree with the district court that Quikrete was entitled to summary judgment on the Salazars' claim of promissory estoppel.[3] None of the evidence presented by the Salazars, we conclude, would allow a jury to find that Leigh made an actual promise to Mr. Salazar guaranteeing that C&S would be afforded Quikrete's hauling work for any period of time, including, but not limited to, the summer of 2018. Nor, we conclude, would the evidence presented by the

---

[3] Plaintiffs argue in their appellate brief that, "due to impoverished funds" on their part, their attorney "did not adequately represent" them in the district court proceedings. Aplt. Br. at 1. They "ask[] [us] to reconsider and review this case with complete responses to allegations made by Quikrete" in its motion for summary judgment. *Id.* We have effectively granted this request by reviewing their appellate brief and the information contained therein, as well as all of the district court pleadings.

Salazars allow a jury to find that the Salazars reasonably relied on Leigh's statements when they purchased the equipment.  Therefore, the Salazars' claim of promissory estoppel fails as a matter of law.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

8